IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALAN J. ROSS and ALAN J. ROSS INSURANCE AGENCY, INC.<br>*Plaintiffs, pro se*<br><br>v.<br><br>BENNETT MEYER,<br>MEYER-CHATFIELD CORP., DAVID L. BRAVERMAN, JOHN KASKEY, and BRAVERMAN KASKEY PC<br>*Defendants* | CIVIL ACTION<br><br>NO. 12-998 (Consolidated) |
| MEYER-CHATFIELD CORPORATION, BENNETT S. MEYER, ZCRACKERBOX, LLC, and BRAVERMAN KASKEY, P.C.<br>*Plaintiffs*<br><br>v.<br><br>ALAN J. ROSS d/b/a SAVE ASSOCIATES and ALAN J. ROSS INSURANCE AGENCY INC. d/b/a SAVE ASSOCIATES<br>*Defendants, pro se* | CIVIL ACTION<br><br>NO. 12-2760 |

NITZA I. QUIÑONES ALEJANDRO, J.                      JUNE 14, 2016

## MEMORANDUM OPINION

**INTRODUCTION**

On June 19, 2014, this Court granted a motion for partial summary judgment as to liability only filed by Defendants Meyer-Chatfield Corp. ("Meyer-Chatfield"), Bennett Meyer ("Meyer"), Zcrackerbox, LLC ("Zcrackerbox"), and Braverman Kaskey, P.C. ("Braverman Kaskey"; collectively: "Defendants") in the civil action docketed as 12-2760 (consolidated with the lead civil action docketed as 12-998). Shortly thereafter, this consolidated matter was placed in civil suspense pending the resolution of a related matter in the United States District Court for the Northern District of Illinois. Once a final decision was issued in the Illinois matter, this

consolidated action was restored to the active docket. On January 27, 2016, an assessment of damages hearing was held before this Court in the 12-2760 civil action. The hearing also included argument on *pro se* Plaintiff Alan J. Ross' ("Ross") *motions for relief* filed pursuant to Federal Rule of Civil Procedure ("Rule") 60(b)(6), [ECF 109, 111],[1] in which he raised the issue of *res judicata*. At the conclusion of the assessment of damages hearing, this Court held the disposition of Ross' motions and the final determination of damages under advisement pending receipt of additional briefs addressing the *res judicata* argument. These additional briefs have been filed.[2] For the reasons set forth herein, Ross' Rule 60(b)(6) motions are granted and Defendants' request for damages is denied.

**FACTUAL AND PROCEDURAL HISTORY**

To understand and dispose of the issues presented in Ross' Rule 60(b)(6) *motions for relief*, Defendants' opposition thereto, and Defendants' request for damages, a brief highlight of the pertinent factual and procedural background, previously set forth in the Memorandum Opinion dated June 19, 2014,[3] is in order; *to wit*:

*The Patent*

> Ross invented a patent ("Patent") designed as a business method for pooling death benefits of institutionally-owned life insurance policies (*Pooled Benefit Trust* ("PBT")).[4] On July 14, 2006, Ross and Meyer entered into a marketing agreement in which Meyer-Chatfield agreed to market the PBT. In early 2008, Meyer-Chatfield and Ross reached an oral understanding, which provided Meyer-Chatfield a minority equity interest in the Patent. On June 5,

---

[1] These are, essentially, identical filings.
[2] [ECF 114, 115].
[3] This Memorandum Opinion dismissed Ross' second amended complaint in civil action 12-998. [ECF 81].
[4] United States Patent No. 5,974,390 enables sales through the enrollment of bank-owned life insurance (BOLI), carrier-owned life insurance (IOLI), non-BOLI and non-IOLI corporate-owned life insurance (COLI) or government-owned life insurance (GOLI), through which specialized funds are set aside as a trust. *Settlement Agrt.* ¶ 1. [ECF 59-1].

2008, Ross, SAVE Associates, Meyer, Meyer-Chatfield, and Braverman Kaskey entered into the *MRB Agreement*, in which Ross was to receive a 45% equity interest in a newly created partnership – *MRB Pooled Benefits LLC* – a Delaware limited liability company formed to commercially exploit the Patent. Under the agreement, Meyer and Braverman Kaskey would receive 45% and 10% equity interests in the partnership, respectively.

Meanwhile, Ross was negotiating with Balshe LLC and The Simon Law Firm (collectively: the "Balshe Parties"), both Chicago firms, to sell to them the Patent. However, negotiations appeared to have broken down when Ross refused the Balshe Parties' offer. On May 27, 2008, the Balshe Parties filed a complaint against Ross in the Circuit Court of Cook County, Illinois, which was removed to the United States District Court for the Northern District of Illinois and docketed as *Balshe LLC and The Simon Law Firm v. Alan J. Ross and SAVE Associates*, CIV. A. 08-3256 (N.D. Il. 2008) (the "2008 Illinois Action"). In the complaint, the Balshe Parties averred, *inter alia*, that Ross had sold to the Balshe Parties all of his right, title, and interest in the Patent.[5]

Meyer-Chatfield intervened in the 2008 Illinois Action claiming an interest in the Patent. Braverman Kaskey was engaged to represent Ross in the 2008 Illinois Action. In exchange for its professional services, Braverman Kaskey obtained a 10% equity interest in *MRB Pooled Benefits LLC* (as provided for in the *MRB Agreement*). The parties further agreed under this arrangement that Ross would transfer his right, title, and interest in the Patent.[6]

*The Settlement Agreement and the Revised MRB Agreement*

The 2008 Illinois Action settled, and the Balshe Parties, Meyer-Chatfield, and Ross executed the *June 26, 2008 Settlement Agreement and General Release* ("*Settlement Agreement*"), resolving all disputes and claims regarding the ownership and commercial exploitation of the Patent.[7] Although Meyer-Chatfield was not a party to the 2008 Illinois Action, it was a signatory to the *Settlement Agreement* apparently due to its legal interest and right to market the PBT.[8]

As part of the *Settlement Agreement*, the parties agreed to form a new entity, *Newco*, to commercially exploit the Patent,[9] and that Ross and company would assign to *Newco* all right, title, and interest in the Patent.[10] In turn, *Newco* was to acquire all right, title and interest in the Patent held by an affiliated entity of the AXA Group, as successor-in-interest to the Mutual Life Insurance

---

[5] *Id.*, First Recital.
[6] *MRB Agrt.* ¶ 1. [ECF 4-1].
[7] *Settlement Agrt.*, Fifth Recital.
[8] *Id.*, Fourth Recital.
[9] *Id.* at ¶ 1.
[10] *Id.* at ¶ 2.

3

Company of New York ("*AXA Patent Interest*"). SAVE Associates (Ross' company) was to then exercise its option on the *AXA Patent Interest* (on behalf of *Newco*) and immediately assign the *AXA Patent Interest* to *Newco*. The Balshe Parties and Meyer-Chatfield were to share equally in the cost of acquiring the *AXA Patent Interest*.[11]

On June 26, 2008, Ross and Braverman Kaskey revised their June 5, 2008 *MRB Agreement* ("*Revised MRB Agreement*"), specifying that *Newco* would be owned by the Balshe Parties, Ross, and Meyer-Chatfield. The *Revised MRB Agreement* also provided for membership interests in *Newco* to be shared by Braverman Kaskey, Ross, and Meyer-Chatfield, and that Ross would transfer all of his right, title, and interest in the Patent.[12]

*Subsequent Lawsuits*

On January 30, 2012, Ross sued the Balshe Parties and Meyer-Chatfield in the United States District Court of Delaware to enforce the *Settlement Agreement*; action docketed as *Alan J. Ross and SAVE Associates v. Balshe LLC, The Simon Law Firm and the Meyer-Chatfield Corp., Institutional Pooled Benefits LLC, Institutional Longevity Assets LLC, MRB Pooled Benefits LLC*, CIV. A. 12-102 (D. Del. 2012) (the "2012 Delaware Action").

On February 10, 2012, the Balshe Parties and Meyer-Chatfield commenced another action in the United States District Court for the Northern District of Illinois to enforce the *Settlement Agreement*; action docketed as *Balshe LLC, The Simon Law Firm, The Meyer-Chatfield Corporation v. Alan J. Ross, SAVE Associates*, CIV. A. 12-966 (N.D. Il. 2012) (the "2012 Illinois Action").

On February 22, 2012, Ross and Alan J. Ross Insurance Agency, Inc., commenced the instant lead consolidated lawsuit ("12-998") in this Court against Defendants *Meyer, Meyer-Chatfield, David L. Braverman, John Kaskey, and Braverman Kaskey* to enforce the *Revised MRB Agreement*.

On April 16, 2012, Meyer-Chatfield, Meyer, Braverman Kaskey, and Zcrackerbox,[13] commenced an action against Ross and SAVE Associates in the Philadelphia County Court of Common Pleas to enforce the *Revised MRB Agreement*. On May 18, 2012, Ross removed the action to this court; docketed as *Meyer-Chatfield Corporation, Bennett S. Meyer, Zcrackerbox, LLC, Braverman Kaskey, P.C. v. Alan J. Ross d/b/a SAVE Associates, Alan J. Ross Insurance Agency Inc. d/b/a SAVE Associates*, CIV. A. 12-2760 (E.D. Pa. 2012) ("12-

---

[11] *Id.* at ¶ 3.
[12] *Revised MRB Agrt.* ¶ 2.
[13] In the latter half of 2008, after execution of the *Revised MRB Agreement*, Braverman Kaskey assigned its rights to Zcrackerbox. Compl. ¶ 26 [CIV. A. 12-2760, ECF 1-1].

2760").[14] On December 3, 2012, the Honorable Stewart Dalzell consolidated 12-2760 with the instant (lead) matter. On July 30, 2013, the consolidated matter was reassigned to this Court's docket. [ECF 30].

*Northern District of Illinois and Eastern District of Pennsylvania Courts' Decisions*

On January 15, 2014, Defendants filed in this Court notice of a January 9, 2014 decision issued by the Honorable James B. Zagel in the 2012 Illinois Action, and argued for the application of the doctrines of *res judicata* and collateral estoppel in the 12-998 matter based on Judge Zagel's decision. [ECF 47]. In his decision, Judge Zagel essentially found Ross in breach of his obligation under the *Revised MRB Agreement* to transfer all of his right, title, and interest in the Patent, an obligation that was also established in the *Settlement Agreement*.[15] Judge Zagel further granted the Balshe Parties and Meyer-Chatfield leave to seek damages resulting from Ross' breach. Accordingly, in early May 2014, the Balshe Parties and Meyer-Chatfield filed separate motions in the 2012 Illinois Action for partial summary judgment as to damages pursuant to the *Settlement Agreement*. In seeking only attorneys' fees and costs, the Balshe Parties explicitly indicated they had "foregone proving up the millions of dollars of damages actually caused by [Ross'] breaches."[16] Meyer-Chatfield similarly requested only attorneys' fees and costs.[17] On June 6, 2014, Judge Zagel granted the Balshe Parties and Meyer-Chatfield's respective motions and awarded the Balshe Parties $98,993.00 in attorneys' fees and $2,351.31 in costs, and Meyer-Chatfield $52,810.00 in attorneys' fees and $1,515.05 in costs.

Relying on Judge Zagle's decision, on June 19, 2014, this Court granted Defendants' motions to dismiss Ross' second amended complaint in civil action 12-998, and for partial summary judgment as to liability in civil action 12-2760. [ECF 81, 82]. In its rulings, this Court applied the doctrine of *res judicata* and found that the principal issue pending before it was decided by Judge Zagel; specifically, Ross' breach of his obligation to transfer his right, title, and interest in the Patent under the *Settlement Agreement*. Ross appealed this Court's June 19, 2014 Order. However, on November 25, 2014, the Third Circuit Court of Appeals

---

[14] On January 7, 2013, in response to Ross' motion to dismiss 12-2760, herein Defendants filed a *cross-motion for entry of default and default judgment* against Alan J. Ross Insurance Agency, Inc. [ECF 23]. The Honorable Stewart Dalzell granted the cross-motion on August 16, 2013, and all pleadings filed by "Alan J. Ross Insurance Agency, Inc.," as an incorporated sole proprietorship and not represented by licensed counsel, were dismissed. [ECF 38].
[15] *Settlement Agrt.* ¶ 2.
[16] *See* Memorandum of Law in Support of Motion for Partial Summary Judgment as to Damages at 8. [CIV. A. 12-966 (N.D. Il. 2012), ECF 105].
[17] *See* Brief in Support of Meyer-Chatfield's Motion for Summary Judgment as to Damages. [*Id.*, ECF 108-2].

5

dismissed Ross' appeal for lack of appellate jurisdiction, as premature, because the consolidated matter, 12-2760, had not yet been fully resolved.[18]

Thereafter, on June 23, 2014, the instant consolidated matter was placed in civil suspense, pending the final resolution of the 2012 Illinois Action, [ECF 88]; Ross had filed an appeal of Judge Zagel's January 9, 2014 decision (finding Ross' breach of contract) and the June 6, 2014 decision (awarding attorneys' fees and costs to the Balshe Parties and Meyer-Chatfield). On July 23, 2015, the Seventh Circuit Court of Appeals affirmed those decisions.

On October 5, 2015, Ross filed a motion to remove the instant consolidated matter from civil suspense. In his motion, Ross outlined Judge Zagel's aforesaid decisions, his appeal to the Seventh Circuit, and the Seventh Circuit's affirmance of those decisions. Ross further acknowledged that the issue in the 2012 Illinois Action as to damages "has been finalized." [ECF 95]. Accordingly, the instant consolidated matter was removed from civil suspense and an assessment of damages hearing to determine the remaining issue of damages in civil action 12-2670 was scheduled for January 27, 2016. Ross then filed an assessment of damages memorandum and Rule 60(b)(6) *motions for relief*, [ECF 109, 110, 111], in which he raised the issue of *res judicata* and requested that this Court reverse its June 19, 2014 Order, [ECF 82], which granted summary judgment as to liability *only* against Ross in the 12-2760 matter.

In the interim, on October 28, 2013, the 2012 Delaware Action was transferred to Judge Zagel and docketed as *Alan J. Ross, SAVE Associates v. Balshe LLC, Simon Law Firm, Meyer-Chatifled Corp., Institutional Pooled Benefits LLC, Institutional Longevity Assets LLC, and MRB Pooled Benefits LLC*, CIV. A. 13-7703 (N.D. Il. 2013).[19] On January 6, 2016, Judge Zagel granted a motion for judgment on the pleadings filed by Defendant Institutional Longevity Assets, LLC (formerly Balshe LLC) based upon the doctrine of *res judicata*. In his memorandum opinion and order, Judge Zagel acknowledged that: (1) the *Settlement Agreement* at issue in the 2012 Delaware Action was the same agreement in the 2012 Illinois Action, which he had considered and ruled on in favor of herein Defendants on January 9, 2014; (2) the court awarded damages of $150,000.00 to the Balshe Parties and Meyer-Chatfield; (3) Ross appealed the court's rulings to the Seventh Circuit; and (4) Judge Zagel's orders were affirmed

---

[18] Where two or more actions are consolidated for all purposes of discovery and trial, a judgment in one of those actions is not appealable either until all of the consolidated actions have been resolved, or until the District Court grants a motion for certification under Rule 54(b). *Ross v. Meyer*, C.A. 14-3769 (3d Cir.) (citing *Bergman v. Atlantic City*, 860 F.2d 560, 567 (3d Cir. 1988)).

[19] For reasons unknown to this Court, no party to this consolidated matter requested a transfer to the Northern District of Illinois.

and final judgment entered after the appeal was decided against Ross.[20] Consequently, the 2012 Delaware Action was dismissed.

## DISCUSSION

As stated, on June 19, 2014, this Court granted Defendants': (a) motion to dismiss Ross' second amended complaint, which resolved the 12-998 action; and (b) motion for partial summary judgment on liability, in the 12-2760 action, based upon Judge Zagel's 2012 Illinois Action decision. In light of the procedural posture, what appears left to resolve is the issue of damages, if any, caused by Ross' adjudicated breach under the *Revised MRB Agreement*.

In his assessment of damages brief and Rule 60(b)(6) *motions for relief*, Ross, however, argues for the application of the doctrine of *res judicata* and contends such doctrine precludes Defendants from seeking any further damages in the 12-2760 matter because this Court, in granting partial summary judgment, essentially found the 12-2760 action and the 2012 Illinois Action to be one and the same and, therefore, all damages claimed by Defendants could and should have been claimed in the already adjudicated 2012 Illinois Action. Ross argues that this Court should reverse its June 19, 2014 Order granting partial summary judgment in favor of Defendants as to liability and should decide the remaining issue of damages against Defendants.

Conversely, Defendants contend that Ross' Rule 60(b)(6) *motions for relief* are untimely and further fail to substantiate the existence of any "extraordinary circumstances." Defendants also argue that the *res judicata* argument is without merit because: (1) the claims asserted and contracts involved in the 12-2760 action (concerning the *Revised MRB Agreement*) and the 2012 Illinois Action (initiated to enforce the *Settlement Agreement*) are different; (2) the parties to

---

[20] January 6, 2016 Memorandum Opinion and Order at 2. [CIV. A. 13-7703 (N.D. Il. 2013), ECF 96].

those actions are different; and (3) Ross waived the right to raise the doctrine of *res judicata* as a defense in this action. This Court will address the parties' arguments

*Federal Rule of Civil Procedure 60(b)(6)*

Generally, the purpose of Rule 60(b) is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done. *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 271 (3d Cir. 2002). Rule 60(b)(6) is considered a catchall provision which allows a court to relieve a party from the effects of an order for "any other reason justifying relief from the operation of the judgment." *Id.* at 273 (quoting Fed. R. Civ. P. 60(b)(6)). Rule 60(b)(6) provides for extraordinary relief, which may only be invoked upon a showing of exceptional circumstances. *In re Fine Paper Antitrust Litig.*, 840 F.2d 188 (3d Cir. 1988); *see also United States Steel Corp. v. Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1274 (3d Cir. 1979); *Marshall v. Bd. of Educ.*, 575 F.2d 417, 425 (3d Cir. 1978). In order for a party to meet the burden of demonstrating extraordinary circumstances, there must be a showing that, without relief from the judgment, "an extreme 'and unexpected' hardship will result." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008) (quoting *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977)).

As for when a Rule 60(b)(6) motion may be filed, Rule 60(c) provides that motions made under Rule 60(b) must be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1); *Reardon v. Leason*, 465 F. App'x 208, 210 (3d Cir. 2012); *see also United States ex rel. Pritsker v. Sodexho, Inc.*, 493 F. App'x 309, 312 (3d Cir. 2012) (affirming district court's determination that filing Rule 60(b)(6) motion over two years after grant of motions to dismiss was not a reasonable time); *Moolenaar v. Gov't of the V.I.*, 822 F.2d 1342, 1348 (3d Cir. 1987) (holding that two-year delay was not a "reasonable time" to bring a Rule 60(b)(6) motion). Proof of extraordinary

8

circumstances suggests "that the party is faultless in the delay." *Pioneer Inv. Servs. v. Bruswick Assocs. P'ship*, 507 U.S. 380, 393 (1993); *see also Klapprott v. United States*, 335 U.S. 601, 613-614 (1949) (finding that the petitioner proved extraordinary circumstances where he was prevented from making a timely appeal of judgment for four years because of incarceration, ill health, and other factors beyond his reasonable control).

Here, Defendants suggest that the filing of the instant Rule 60(b)(6) *motions for relief* on the eve of the assessment of damages hearing was untimely. This Court disagrees. As stated, on June 19, 2014, this Court granted Defendants' motion for partial summary judgment as to liability *only* and left the assessment of damages undecided. Shortly thereafter, on June 23, 2014, this matter was placed in civil suspense pending the resolution of the 2012 Illinois Action. On October 5, 2015, four days after the 2012 Illinois Action became final, Ross requested that the consolidated matter be returned to this Court's active docket. This request was granted and within two months, an assessment of damages hearing was scheduled. In light of this history, this Court can only surmise that Ross was waiting for Judge Zagel's 2012 Illinois Action decision on damages. Therefore, considering the civil suspension of this matter from June 2014 to October 2015, Ross' filing of his Rule 60(b)(6) motions is deemed timely.

Although Defendants argue that Ross simply offers no "extraordinary circumstances" to either justify Ross' delay or provide a basis for Rule 60(b)(6) relief, for the reasons that follow, Ross' argument for the application of *res judicata* warrants consideration on the merits of his Rule 60(b)(6) motions.

*Res Judicata*

In his Rule 60(b)(6) *motions*, Ross argues for the application of the doctrine of *res judicata* to effectively preclude Defendants' claim for damages. Also known as claim preclusion,

*res judicata* bars a party from initiating a second suit against the same adversary based on the same "cause of action" as the first suit. *Duhaney v. Attorney Gen. of the United States*, 621 F.3d 340, 347 (3d Cir. 2010); *see also United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984). A party seeking to invoke *res judicata* must establish three elements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Mullarkey v. Tamboer (In re Mullarkey)*, 536 F.3d 215, 225 (3d Cir. 2008). "The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." *Id.*

While there is no precise definition of what constitutes "the same cause of action," the Third Circuit Court of Appeals has observed that it is appropriate for courts to consider what this Court will call the "*Athlone* factors"; *to wit*: (1) whether the acts complained of and the demand for relief are the same; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same; and (4) whether the material facts alleged are the same. *See Athlone*, 746 F.2d at 984. Importantly, "it is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions." *Sheridan v. NGK Metals Corp.*, 2008 WL 2156718, at * 11 (E.D. Pa. May 22, 2008) (citing *Athlone*, 746 F.2d at 984). Rather, courts should "take a broad view of what constitutes identity of causes of action." *Athlone*, 746 F.2d at 984.

Here, Defendants argued for the application of the doctrine of *res judicata* in their Rule 12(b)(6) motion to dismiss Ross' second amended complaint in the 12-998 action citing to Judge Zagel's decision.[21] This Court agreed, and granted partial summary judgment on the issue of

---

[21] The issue of *res judicata* can be resolved on a Rule 12(b)(6) motion, "when all relevant facts are shown by the court's own records, of which the court takes notice." *Evans Supplies and Commc'n Co. v. Elliot Lewis Corp.*, 2007 WL 1630187, at *3 (E.D. Pa. May 31, 2007) (citing *Day v. Moscow*, 955 F.2d